UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 21-10612

DANIEL HOLTZ.

     Plaintiff,

vs

TILTON, INC, d/b/a TILTON GALLERY,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Daniel Holtz sues Tilton, Inc (d/b/a Tilton Gallery), and states:

## JURISIDCTION, VENUE, AND THE PARTIES

1.     This is an action for damages in excess of $75,000 by Mr. Daniel Holtz, for breach of express warranty, negligent misrepresentation and recission.

2.     This Court has jurisdiction pursuant to pursuant to 28 U.S.C. § 1332.

3.     Venue is proper in this District because Defendant maintains its principal place of business in this District.

4.     Plaintiff Daniel Holtz is a resident of Miami-Dade County, Florida.

5.     Defendant Tilton, Inc (d/b/a Tilton Gallery) is a New York for profit company that, as relevant here, operates at 8 east 76th Street, Manhattan, NY in the County of New York.

6.     All conditions precedent to the filing of this action have occurred, have been fulfilled, waived, excused, or otherwise satisfied.

7.     Plaintiff Daniel Holtz has retained the law firms of Grass Law Group, PLLC and the ALGO Law Firm, LLP to represent it in the prosecution of this lawsuit and is obligated to

pay such attorneys their reasonable fees and expenses.

**GENERAL ALLEGATIONS**

8.      Plaintiff Holtz is an art collector.

9.      Prior to his passing in 2017, Mr. Jack Tilton, a principal at the Tilton Gallery ("the Gallery"), worked closely with Plaintiff Holtz.

10.     Mr. Tilton was a reliable and expert art dealer with a recognized reputation of having professional expertise and experience in the world of art.

11.     Plaintiff Holtz relied heavily on Mr. Tilton's expertise due to his lack of similar experience and skill in this arcane world of art, with an insular art aficionado community.

12.     Over the years, Plaintiff Holtz has spent over $1 million on various pieces, resulting in the payment of a considerable sum of money in the form of commissions to the Gallery.

13.     Mr. Tilton held a position of trust and confidence with Plaintiff Holtz. Mr. Tilton took advantage of this trust and confidence by suggesting that Plaintiff Holtz acquire artwork by Mr. Kai Althoff as he was a highly sought after artist. When Mr. Tilton "learned" that one of the exhibiting galleries at the elite art gathering attended by art collectors, Art Basel (Miami Beach) had one of Mr. Althoff's pieces for sale, he alerted Plaintiff Holtz.

14.     Mr. Tilton capitalizing on his status as a respected art dealer and Plaintiff Holtz's reputation as an avid art collector, Mr. Tilton arranged to have the piece put on hold for Plaintiff Holtz.

15.     Mr. Tilton made the false and material misrepresentation to Plaintiff Holtz that the painting in question was the work of Mr. Althoff.

16.     Induced by the foregoing false misrepresentations of Mr. Tilton, and acting in reasonable reliance thereon, Plaintiff Holtz agreed to purchase the artwork for $110,000.00 plus a ten percent commission of $11,000.00 to the Gallery, for a total of $121,000.00.

17.     Mr. Tilton provided an invoice to Plaintiff Holtz repeating the misrepresentation that the piece of art was one of Mr. Althoff. Invoice dated April 10, 2008, attached as *Exhibit "A"*.

18.     Ever since the delivery of said painting to Plaintiff Holtz, it has been displayed prominently in Plaintiff's home located in Miami-Dade County, Florida.

19.     In continuing and reasonable reliance on the expertise and false representations of Mr. Tilton, and wholly unaware of the true facts, Plaintiff Holtz continued to believe until December of 2019 that Mr. Tilton's representations were true and that the painting hanging in his house was the authentic work of Mr. Tilton.

20.     Acting reasonably on that belief and in reasonable reliance on Mr. Tilton's representations, Plaintiff Holtz took no prior action to hold the Gallery liable for their false representations, which, until December of 2019, he continued reasonably to believe were entirely true.

21.     But as Plaintiff Holtz later learned, it was a complete "forgery." In December of 2019, Plaintiff Holtz learned for the first time, contrary to the representations of Mr. Tilton, that the painting in question is not in any part the work of Mr. Althoff, but instead a total forgery, and that said painting has essentially no value at all.

22.     In December of 2019, Plaintiff Holtz showed the artwork in question to Christian Nagel of Galerie Nagel Draxler. Mr. Nagel wanted to exhibit Mr. Althoff's piece at his gallery's booth during the 2019 Art Basel (Miami Beach) event for possible sale.

23.     However, when Mr. Nagel sent an image of the piece to Mr. Althoff, the artist disclaimed the artwork.

24.     Mr. Tilton's misrepresentations and continuing concealment of the true facts of the painting, as alleged hereinabove, prevented Plaintiff Holtz from knowing, discovering or even suspecting until December of 2019 that Mr. Tilton's representations were untrue and prevented Plaintiff Holtz from bringing any prior civil action based on the facts alleged herein.

25.     After learning that the artwork attributed to Mr. Althoff was a fake, Plaintiff Holtz immediately notified Defendant of the situation. His inquiry went unanswered.

26.     Plaintiff Holtz exerted followed up several times throughout 2020 and received no meaningful reply.

27.     Had Mr. Tilton's representations been true, as Plaintiff Holtz reasonably believed until December of 2019, the present value of said painting would be at least $250,000.00. Since the painting is not genuine, it has virtually no value and never will.

28.     As a direct and proximate result of Mr. Tilton's actions, Plaintiff Holtz has been damaged in a sum in excess of $250,000.00.

## COUNT I – BREACH OF EXPRESS WARRANTY

29.     Daniel Holtz re-alleges the allegations contained in paragraphs 1 through 28 of this Complaint.

30.     On or about April 10, 2008, to induce Plaintiff Holtz to buy the said painting, Mr. Tilton expressly warranted to Plaintiff Holtz orally and in writing that the said painting was the authentic work of Kai Althoff.

31.     In addition to defendant's breach of their express warranties, defendant's conduct was also a breach of its implied warranty of merchantability, in that (a) the said painting was not

4

fit for the purpose for which such works of art are sold and (b) the said painting was not honestly resalable in the normal course of business.

32.     Induced by the foregoing false misrepresentations of Mr. Tilton, and acting in reasonable reliance thereon, Plaintiff Holtz agreed to purchase the artwork for $110,000.00 plus a ten percent commission of $11,000.00 to the Gallery, for a total of $121,000.00.

33.     Defendant was and are in material breach of these express warranties.

34.     No part of the said painting was the work of Kai Althoff. It was, in fact, a total forgery that had never been owned, signed or even seen by Althoff.

35.     Defendant's misrepresentations and continuing concealment of the true facts as alleged hereinabove prevented Plaintiff Holtz from knowing or discovering, until December 2019, that Defendant's express and implied warranties were untrue, and prevented Plaintiff Holtz from bringing any prior civil action against any of Defendant based on the facts alleged herein.

36.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff Holtz has been damaged.

37.     Had Defendant's warranties been true and correct, the said painting would have a present value of at least $250,000.00. Since Defendant's warranties were entirely untrue and the said painting is a total forgery, it has virtually no present value.

WHEREFORE, Plaintiff Daniel Holtz demands judgment in its favor and against Defendant Tilton, Inc (d/b/a Tilton Gallery) for compensatory damages together with interest, costs, attorney fees and costs, and such other relief as may be deemed just and proper.

## COUNT II – NEGLIGENT MISREPRESENTATION

38.     Daniel Holtz re-alleges the allegations contained in paragraphs 1 through 28 of this Complaint.

39.     Defendant, at the very least, failed to exercise due, reasonable or any care commensurate with the expertise they held themselves out as possessing and were, at the very least, grossly negligent in making, or, in Mr. Tilton's case, aiding and abetting the making of, the false representations with respect to the said painting alleged hereinabove, and in causing Plaintiff Holtz reasonably to rely on those false representations first by acquiring and paying for the said painting and thereafter by bringing no prior action to rescind the sale or to recover damages.

40.     Mr. Tilton was a reliable and expert art dealer with a reputation of having professional expertise and experience in the world of art.

41.     Plaintiff Holtz relied heavily on Mr. Tilton's expertise due to his lack of similar experience and skill in this arcane world of art.

42.     On or about April 10, 2008, to induce Plaintiff Holtz to buy the said painting, Mr. Tilton orally and in writing misrepresented to Plaintiff Holtz that the said painting was the authentic work of Kai Althoff.

43.     Induced by the foregoing false misrepresentations of Mr. Tilton, and acting in reasonable reliance thereon, Plaintiff Holtz agreed to purchase the artwork for $110,000.00 plus a ten percent commission of $11,000.00 to the Gallery, for a total of $121,000.00.

44.     No part of the said painting was the work of Kai Althoff. It was, in fact, a total forgery that had never been owned, signed or even seen by Althoff.

45.     Defendant's misrepresentations and continuing concealment of the true facts as alleged hereinabove prevented Plaintiff Holtz from knowing or discovering, until December 2019, that Defendant's representations were untrue, and prevented Plaintiff Holtz from bringing any prior civil action against any of Defendant based on the facts alleged herein.

46.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff Holtz has suffered damages in excess of $250,000.00.

WHEREFORE, Plaintiff Daniel Holtz demands judgment in its favor and against Defendant Tilton, Inc (d/b/a Tilton Gallery) for compensatory damages together with interest, costs, attorney fees and costs, and such other relief as may be deemed just and proper.

## COUNT III – NEGLIGENT MISREPRESENTATION

47.     Daniel Holtz re-alleges the allegations contained in paragraphs 1 through 28 of this Complaint.

48.     By reason of the facts alleged hereinabove, there existed, at the very least, a mutual mistake of fact or a mistake of fact by Plaintiff Holtz known, or which should have been known to Defendant and Mr. Tilton, concerning the authenticity and authorship of the said painting.

49.     Based on the foregoing, Plaintiff Holtz is entitled to rescind his purchase of the Painting and to the return from Defendant of the $121,000 Plaintiff Holtz paid for the said painting plus interest thereon at the highest lawful rate.

50.     Upon a judgment of such rescission and Plaintiff Holtz's receipt of such sums, he will return the said painting to Defendant or its consignor.

WHEREFORE, Plaintiff Daniel Holtz demands judgment in its favor and against Defendant Tilton, Inc (d/b/a Tilton Gallery) for compensatory damages together with interest, costs, attorney fees and costs, and such other relief as may be deemed just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Daniel Holtz demands trial by jury on all issues so triable.

Dated: December 10, 2021.

Respectfully submitted,

/s/ *Laurel Grass*
Laurel Grass
Email Address: laurel@grasslawgroup.com
Grass Law Group PLLC
502 Park Avenue
New York, NY 10022
Telephone: (800) 960-9248

-and-

/s/ *Ignacio M. Alvarez*
Ignacio M. Alvarez
Email Address: imalvarez@algofirm.com
ALGO Law Firm, LLP
815 Ponce De Leon Blvd
Suite 101
Miami, Florida 33134
Telephone: (786) 723-1876

**Admission *Pro Hac Vice* Pending

*Attorneys for Daniel Holtz.*